**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **JEANIE ROCHELLE WITT, *et al.*,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 7:25-cv-00061-O-BP** |
| | § | |
| **DEPUTY BILLY KENYON, *et al.*,** | § | |
| | § | |
| **Defendants.** | § | |

# FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court are the Motion to Dismiss for Failure to State a Claim and Appendix in Support that Defendants Clay County Sheriff's Department, Sheriff Sidney Horton,[1] Deputy Billy Kenyon, and Deputy FNU Lowery (collectively "Defendants") filed on December 22, 2025 (ECF Nos. 41-42), the response that Plaintiffs Jeanie Rochelle Witt ("Mrs. Witt") and Billy Marvin Witt, III ("Mr. Witt") (collectively "the Witts") filed on January 10, 2026 (ECF No. 43), and the reply that Defendants filed on January 23, 2026 (ECF No. 44), as well as the responses to the Court's Show Cause Order (ECF No. 45) that the Witts filed on May 26, 2026 (ECF No. 46) and Defendants filed on June 2, 2026 (ECF No. 47). After reviewing the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that Chief United States Judge Reed O'Connor **GRANT** Defendants' Motion (ECF No. 41) and **DISMISS with prejudice** the Witts' Second Amended Complaint (ECF No. 38), except for the Witts' claim for injunctive relief, which Judge O'Connor should **DISMISS without prejudice**.

[1] Both Plaintiffs' and Defendants' filings in this case refer to the Clay County Sheriff as "Sydney Horton." *See, e.g.*, ECF Nos. 38, 41. However, it is public record that Sheriff Horton spells his name "Sidney." *See* County Sheriff, CLAY CNTY., TEX., https://www.claycountytx.net/county-sheriff (last visited July 13, 2026). Accordingly, the Court will use the spelling "Sidney."

## I. BACKGROUND

From 2024 to 2025, the Witts had several confrontations with law enforcement officers. The first occurred on April 3, 2024, on the side of State Highway 79 in northern Clay County. On that day, Deputy Sheriff Billy Kenyon initiated a traffic stop on the Witts' car, and the situation escalated. The Witts allege that Kenyon physically assaulted Mr. Witt, forcibly removed both Witts from their vehicle, and placed them under arrest without cause. *See* ECF No. 38 at 9. After he handcuffed them, Kenyon searched the vehicle while one or both of the Witts stood on the roadside on an incline. *Id.* This posed a problem for Mrs. Witt, who is an amputee, uses a prosthetic leg, and reports some difficulty with balance. *See id.* When Mrs. Witt explained to Kenyon that her position on the incline was unsafe, he allegedly replied, "Well, you look like you're doing just fine to me," and did not move her to more level ground. *Id.* following Kenyon's search of the car, a separate officer transported the Witts to the Clay County Jail in Henrietta. *Id.* at 10. Mrs. Witt alleges she experienced a "degrading and invasive strip search" when she arrived at the jail. *Id.* at 9.

On April 12, 2024, another incident occurred at the Witts' residence. Kenyon and several other deputies surrounded the home and engaged in a standoff with Mr. Witt for more than an hour until the officers produced a warrant and Mr. Witt surrendered. *Id.* at 11. Then, a month later, as she was leaving a convenience store, Mrs. Witt encountered another Clay County deputy. This officer, who "had been loitering in the area," initiated a traffic stop as Mrs. Witt attempted to exit the parking lot. *Id.* When Mrs. Witt asked him for his badge number, the officer allegedly told her that Clay County deputies did not utilize badge numbers. After Mrs. Witt filed a public records request with the Clay County Sheriff's Department seeking surety bond information for this officer and for Kenyon, a representative allegedly informed her that "there are no surety bonds on [Clay

County] deputies." *Id.* at 12.

In July 2024, Clay County deputies again surrounded the Witt home. This time, the standoff lasted for more than four hours before the officers again produced a warrant, and Mr. Witt again surrendered peacefully.

On November 2, 2024, officers returned to the Witt residence to assist a tow truck driver in repossessing the Witts' car. When Mr. Witt stood between the vehicle and the Clay County deputies, one officer allegedly bumped into Mr. Witt, which then "escalated the situation and resulted in multiple officers forcefully tackling and striking him." *Id.* at 13. Among the officers present was Clay County Sheriff Sidney Horton. During the incident, Mrs. Witt verbally challenged Horton and questioned if the deputies had lawful authority to act if Clay County did not maintain surety bonds on its deputies. *Id.*

On June 17, 2025, the Witts filed a Complaint against the Clay County Sherriff's Department ("CCSD"), Sheriff Horton, Deputy Kenyon, and others, alleging violations of 42 U.S.C. § 1983. ECF No. 1. On June 18, 2025, Horton and various officers returned to the Witt home to execute multiple arrest warrants on Mr. Witt for his conduct and an alleged terroristic threat during the November 2, 2024, incident. Among this team of officers was Clay County Deputy Constable Lowery. After entering the house, officers threw Mr. Witt to the floor and arrested him. Others also ordered Mrs. Witt to the ground. Meanwhile, Lowery opened the Witts' daughter's bedroom and allegedly threatened her with a firearm.

After this episode, Mrs. Witt pursued another open records request for Mr. Witt's arrest warrants. From her research, she contends that the warrants were not only unsigned, but marked as "returned" on June 13, 2025, five days before they were executed. *Id.* at 15. Subsequently, the Witts filed an Amended Complaint on October 8, 2025, and a Second Amended Complaint on

November 22, 2025. ECF Nos. 21, 38. In their Second Amended Complaint, the Witts bring a host of claims against CCSD, Horton, Kenyon, and Lowery, alleging violations of the First, Fourth, and Fourteenth Amendments of the United States Constitution, the Americans with Disabilities Act of 1990 ("ADA"), and the Texas Public Information Act. *See* ECF No. 38 at 15-38. On December 22, 2025, Defendants moved to dismiss the Second Amended Complaint for failure to state a claim. ECF No. 41.

By Order dated May 14, 2026, the Court ordered the parties to show cause why Mr. Witt's claims should not be dismissed, where relevant, under *Heck v. Humphrey*, 512 U.S. 477 (1994) and its progeny, or for lack of standing. ECF No. 45. The Witts responded on May 26, 2026 (ECF No. 46), and Defendants responded on June 2, 2026 (ECF No. 47).

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of complaints that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To state a viable claim for relief, a complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering a Rule 12(b)(6) motion, courts must "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff . . . and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Yumilicious Franchise, LLC v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (citing *Twombly*, 550 U.S. at 547).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a motion to dismiss, a court may consider

documents outside the complaint when they are: (1) attached to the motion to dismiss; (2) referenced in the complaint; and (3) central to the plaintiff's claims. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). It may also "consider documents attached to the complaint." *Dobbins v. Fed. Rsrv. Bank of Dall.*, No. 3:20-cv-620-L, 2020 WL 9071686, at *7 (N.D. Tex. Dec. 29, 2020), *rec. accepted*, 2021 WL 1222138 (N.D. Tex. Mar. 31, 2021). "[I]f a plaintiff attaches documents to his complaint and relies on the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claims." *Id.*

### B. *Pro se* parties

The Court subjects a *pro se* party's pleadings to less rigid analysis than those of a party represented by counsel. "[A] *pro se* complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). However, "even a liberally-construed *pro se* . . . complaint must set forth facts giving rise to a claim on which relief may be granted." *Levitt v. Univ. of Tex. at El Paso*, 847 F.2d 221, 224 (5th Cir. 1988) (citing *Bounds v. Smith*, 430 U.S. 817, 825-26 (1977)). Thus, a court inquires "whether within the universe of theoretically provable facts there exists a set which can support a cause of action under [the] complaint, indulgently read." *Covington v. Cole*, 528 F.2d 1365, 1370 (5th Cir. 1976). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to state a claim for relief." *Ray v. Boone*, No. 24-40169, 2024 WL 4372692, *1 (5th Cir. 2024) (citing *Coleman v. Lincoln Par. Det. Ctr.*, 858 F.3d 307, 309 (5th Cir. 2017)).

### C. Dismissal with or without leave to amend

It is a "well-established policy that the plaintiff be given every opportunity to state a claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The decision to allow amendment

of the pleadings is within the sound discretion of the Court. *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994). Generally speaking, "a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed." *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009). However, courts are not required to grant leave to amend where "an amendment would be futile." *Cledera v. United States*, 834 F. App'x 969, 972 (5th Cir. 2021).

The Court may also appropriately dismiss an action without leave to amend if the Court finds that the plaintiff has alleged his best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999). If the court "outline[s] in [its] opinion the deficiencies" of plaintiff's pleading and "plaintiff nevertheless cannot . . . amend to satisfy [the relevant pleading standard,] the court can then dismiss the complaint with the assurance that the plaintiff has been shown all the deference he is due." *Sims v. Tester*, No. 3:00-cv-0863-D, 2001 WL 627600, at *2-3 (N.D. Tex. Feb. 13, 2001). "At some point, a court must decide that a plaintiff has had fair opportunity to make [his] case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit." *Jacquez v. Procunier*, 801 F.2d 789, 792-93 (5th Cir. 1986); *Schiller v. Physicians Resource Group Inc.*, 342 F.3d 563 (5th Cir. 2003).

## III. ANALYSIS

The Witts bring claims against four defendants: three law enforcement officers and the CCSD. The Witts do not distinguish which plaintiff brings which claims in their Amended Complaint. Accordingly, the Court construes both plaintiffs to bring each claim except where otherwise noted. Those claims are twelve-fold, which Plaintiffs style as follows: (1) "Unlawful Search and Seizure," (2) "Excessive Force," (3) "Malicious Prosecution and Retaliation," (4) "Due Process Violations," (5) "Unlawful Denial of Access to Public Records," (6) First Amendment Retaliation – Violations of the Right to Petition and Freedom of Expression" (7) "Failure to

Intervene – Fourth and Fourteenth Amendment Violations," (8) "Municipal Liability – Unconstitutional Custom, Policy, or Failure to Train (Monell Claim)," (9) "Unlawful Strip Search – Fourth and Fourteenth Amendment Violations," (10) "Failure to Provide Reasonable Accom[m]odations for [Disability] – Fourth and Fourteenth Amendment Violations and Americans with Disabilities Act," (11) "Violation of First Amendment Right [to] Petition the Government for Redress of Grievances," and (12) "Supervisory Liability for Constitutional Violations." ECF No. 38 at 15-38.

**A. Mr. Witt's claims**

As the Court explained in its Show Cause Order dated May 14, 2026 (ECF No. 45), the so-called "*Heck* Bar" prohibits a plaintiff from pursuing a claim that would "necessarily require [him] to prove the unlawfulness of his conviction or confinement." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). Thus, *Heck* precludes a civil action where "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Hainze v. Richards*, 207 F.3d 795, 798 (5th Cir. 2000); *see also Connors v. Graves*, 538 F.3d 373, 377 (5th Cir. 2008) (dismissing under *Heck* where claimant "could not prevail . . . without undermining the validity of his criminal convictions"). This "favorable termination rule" is an absolute bar to litigation "unless the plaintiff demonstrates that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *DeLeon v. City of Corpus Christi*, 488 F.3d 649, 652 (5th Cir. 2007). The Court should dismiss claims to which the *Heck* bar applies with prejudice, subject to the plaintiff's right to reassert those claims if any of the conditions under *Heck* are met. *Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996) (per curiam).

In this case, the Witts sue for a host of alleged constitutional violations that stem from interactions with Clay County law enforcement between April 2024 and June 2025. *See generally* ECF No. 38. But many of those encounters resulted in criminal convictions for Mr. Witt, which as the Court explained, could implicate *Heck*. *See* ECF No. 45. In their response to the Court's Show Cause Order, the Witts write that they "acknowledge that certain claims . . . may implicate the concerns address in" *Heck*, but instead assert that "allegations involving excessive force, retaliatory conduct, supervisory failures, procedural irregularities, and unconstitutional conduct occurred during or after custodial encounters with law enforcement," and thus should not implicate *Heck*. They also contend that the "April 3, 2024 traffic stop did not result in a sustained prosecution or conviction," which should keep "several [of their] claims arising from that incident" unbarred by *Heck*. ECF No. 46 at 4.

As of November 22, 2025, when the Witts filed their Second Amended Complaint in this case, they pleaded that certain felony charges were still pending against Mr. Witt. *See, e.g.*, ECF No. 38 at 20 ("The felony charges currently holding [Mr.] Witt in jail . . . were . . . filed in coordination with retaliatory motives."). As the Court explained on May 14, 2026, the criminal docket of the 97th Judicial District Court of Clay County, Texas, reflects that all of Mr. Witt's felony charges in that court had ended in a conviction. *See State v. Witt*, No. 25-039-DCCR-0070 (97th Dist. Ct., Clay Cnty., Tex. Feb. 23, 2026) (evading arrest); *State v. Witt*, No. 25-039-DCCR-0071 (97th Dist. Ct., Clay Cnty., Tex., Feb. 23, 2026) (assault of a peace officer); *State v. Witt*, No. 25-039-DCCR-0072 (97th Dist. Ct., Clay Cnty., Tex. Feb. 23, 2026) (assault of a peace officer); *State v. Witt*, No. 25-039-DCCR0073 (97th Dist. Ct., Clay Cnty., Tex. Feb. 23, 2026) (obstruction); *State v. Witt*, No. 25-039-DCCR-0103 (97th Dist. Ct., Clay Cnty., Tex. Feb. 23, 2026) (evading arrest); *see also Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (the Court make take

judicial notice of matters of public record). These convictions stem from offenses dated April 3, 2024 (assault of a peace officer); April 12, 2024 (evading arrest); July 2, 2024 (evading arrest); and November 2, 2024 (assault of a peace officer and obstruction).

"It is well settled under *Heck* that a plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights if that violation arose from the same facts attendant to the charge for which he was convicted" unless he proves that his conviction or sentence is no longer valid or has been called into question. *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008) (cleaned up). But a § 1983 claim may lie "if the factual basis for the conviction is temporally and conceptually distinct from" the constitutional claim.

It appears to the Court that *Heck* bars many, if not all, of Mr. Witt's claims as many of his encounters with Clay County law enforcement alleged in this lawsuit ultimately resulted in a criminal conviction, and he has not demonstrated that those convictions have been reversed, expunged, declared invalid, or called into question by the issuance of a writ of habeas corpus. In particular, the Court notes that the April 3, 2024 traffic stop did in fact result in a prosecution and conviction. *See State v. Witt*, No. 25-039-DCCR-0071 (97th Dist. Ct., Clay Cnty., Tex., Feb. 23, 2026) (assault of a peace officer). Even still, to the extent *Heck* does not bar some of Mr. Witt's claims, the Court has examined each claim the Witts raise and finds each independently unavailing. For the following reasons, the Court should dismiss those claims.

**B. Claims against Sheriff Horton, Deputy Kenyon, and Deputy Lowery**

The Court begins with the claims against the individuals in their individual capacities. Kenyon, Lowery, and Horton each argue that the Court should dismiss the Witts' claims against them because of the defendants' qualified immunity. *E.g.*, ECF No. 41 at 16.

"Qualified immunity protects government officials performing discretionary functions

from liability for civil damages insofar as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982)). It is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). "[A] good-faith assertion of qualified immunity alters the usual . . . burden of proof, shifting it to the plaintiff to show that the defense is not available." *Ratliff v. Aransas Cnty.*, 948 F.3d 281, 287 (5th Cir. 2020).

When determining whether an official can claim qualified immunity, courts use a two-part test: (1) whether the facts that a plaintiff has shown establish a violation of a constitutional right, and (2) whether the right was clearly established at the time of the defendant's alleged misconduct. *Wilkerson v. Goodwin*, 774 F.3d 845, 851 (5th Cir. 2014) (citing *Pearson*, 555 U.S. at 232). The Court may decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. Here, the Court need only consider the first prong because the Witts have not pleaded facts to support any violations of their constitutional rights. *Lytle v. Bexar Cnty.*, 560 F.3d 404, 410 (5th Cir. 2009), *abrogated in other part by Mullenix v. Luna*, 577 U.S. 7 (2015) (per curiam).

**1. Unlawful search and seizure**

The Witts allege that Kenyon, Horton, and Lowery subjected them to unlawful searches and seizures in violation of the Fourth and Fourteenth Amendments. ECF No. 38 at 15-27. Specifically, they contend that Kenyon unlawfully stopped their vehicle "despite no criminal activity occurring." *Id.* at 9. Kenyon also allegedly "subjected [them] to a warrantless vehicle search after [Mrs. Witt] explicitly refused consent . . . and after [Mr. Witt] had invoked his Fifth Amendment rights." *Id.* at 16. Kenyon then arrested the Witts. *See id.* at 9.

But a "traffic stop, even if pretextual, does not violate the Fourth Amendment if the officer making the stop has 'probable cause to believe that a traffic violation has occurred.'" *United States v. Escalante*, 239 F.3d 678, 680-81 (5th Cir. 2001) (citing *Whren v. United States*, 517 U.S. 806, 810 (1996)). "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense." *United States v. Zavala*, 541 F.3d 562, 575 (5th Cir. 2008). "Therefore, probable cause to make a traffic stop exists, *inter alia*, when a defendant commits a traffic violation and a law-enforcement officer observes the violation." *United States v. Rosales-Giron*, 592 F. App'x 246, 251 (5th Cir. 2014) (emphasis in original). After reviewing the arrest records Mrs. Witt obtained and attached to her Amended Complaint, the Court concludes Kenyon had probable cause to initiate the traffic stop.

Among those records is the arrest report Kenyon filed after the April 3, 2024, incident. He explained as follows:

> On 4/3/2024 at approximately 1600 hours, I . . . observed a dark color Land Rover SUV with no license plate on the front or back of the vehicle Traveling East on Benton St . . . . I caught up to the vehicle and activated overhead emergency lights to initiate a traffic stop on the vehicle. . . . I made contact with the driver[,] introduced myself and the agency I work for[,] [and] I then informed the driver of the violation.

ECF No. 38 at 55.

Under Texas law, "a person commits an offense if the person operates on a public highway, during a registration period, a motor vehicle that does not display two license plates." Tex. Transp. Code § 504.943(a) (West 2026). The facts here demonstrate that Kenyon observed a vehicle traveling on a public road without two license plates. Texas law provides that the driver of that vehicle, who turned out to be Mr. Witt, was committing a traffic violation. It is thus inarguable

that Kenyon had probable cause to stop the Witts' car, and that stop did not violate the Fourth Amendment. *See United States v. Khanalizadeh*, 493 F.3d 479, 482 (5th Cir. 2007).

The Witts next challenge the search of their vehicle, noting that Kenyon lacked both a warrant and their consent. But neither a warrant nor consent is required to search a vehicle if "(1) the officer conducting the search had probable cause to believe that the vehicle in question contain[ed] property that the government may properly seize; and (2) exigent circumstances justified the search." *United States v. Castelo*, 415 F.3d 407, 412 (5th Cir. 2005).

"[P]robable cause to search an automobile exists when trustworthy facts and circumstances within the officer's personal knowledge would cause a reasonably prudent man to believe that the vehicle contains contraband." *United States v. Edwards*, 577 F.2d 883, 895 (5th Cir. 1978) (en banc) (per curiam). "[A] police officer may draw inferences based on his own experience in deciding whether probable cause exists." *Ornelas v. United States*, 517 U.S. 690, 700 (1996). "Proof of probable cause requires less evidence than . . . proof beyond a reasonable doubt—but more than 'bare suspicion.'" *United States v. Raborn*, 872 F.2d 589, 593 (5th Cir. 1989) (quoting *Brinegar v. United States,* 338 U.S. 160, 175, (1949)). Of note, during "a vehicle stop on a highway, 'the fact of the automobile's potential mobility' supplies the requisite exigency." *United States v. Banuelos-Ramos*, 597 F.3d 763, 767 (5th Cir. 2010) (quoting *United States v. Sinisterra*, 77 F.3d 101, 104 (5th Cir. 1996)).

Here, after lawfully stopping the Witts' vehicle, Kenyon reported that he asked Mrs. Witt "if the driver was high or under the influence of any narcotic." ECF No. 38 at 55. In response, she offered her opinion that "if he was[,] it was because of a vape," and Mrs. Witt produced the vape in question. *Id.* These facts demonstrate that in this case, Kenyon did not just believe the Witts' vehicle contained contraband; he was closer to knowing as much. Mrs. Witt produced the vape for

Kenyon's inspection and admitted that it could potentially intoxicate Mr. Witt. Upon examination of the vape, Kenyon was then able to identify tetrahydrocannabinol, an illegal substance, by its scent. *Id.* Here, Mrs. Witt's opinion and the vape's marijuana odor plainly provided Kenyon sufficient probable cause to search the Witts' vehicle. That search did not violate the Fourth Amendment.

The Witts next allege that Kenyon unlawfully restrained them. As they tell it, "[d]uring the stop, [Mr. Witt] invoked his Fifth Amendment right to remain silent, but Kenyon escalated the encounter and forcibly removed [the Witts] from their vehicle." ECF No. 38 at 9. Kenyon's arrest report describes a different scene. As he writes:

> [T]he driver . . . refused to identify himself, stating I did not have a reason to pull him over. It should be noted that I was in [a] Clay County Sheriff's Office issued uniform with shoulder patches and badge in plain view. . . . I instructed the male later identified as [Mr. Witt] . . . to exit the vehicle due to him refusing to identify himself. [Mr.] Witt refused, stating that I would have to forcefully remove him from the vehicle. I opened the driver's side door and grasped [Mr. Witt's] hands[,] assisting him out of the vehicle. I placed him in temporary hand restraints at that time to detain him for failure to identify and resisting arrest. . . . I advised [Mrs.] Witt that due to her possessing [a] THC vape a probable cause search of the vehicle would be conducted. [Mrs.] Witt refused to exit the vehicle so the search could be conducted. I opened the vehicle and assisted [Mrs.] Witt out and placed temporary hand restraints on her.

ECF No. 38 at 55.

First, to the extent Mr. Witt contends Kenyon violated his Fifth Amendment right against self-incrimination by asking that Mr. Witt identify himself, this contention is wholly without merit. The Fifth Circuit "has found no constitutional impediment to a law enforcement officer's request to examine a driver's license and registration or rental papers during a traffic stop." *United States v. Brigham*, 382 F.3d 500, 507-08 (5th Cir. 2004); *see also United States v. Pack*, 612 F.3d 341, 351 (5th Cir. 2010) (The question of "whether or not it [is] permissible to ask a passenger . . . to

identify himself" is "settled.").

Second, Kenyon's instruction that Mr. Witt get out of the car does not present a constitutional violation. "[I]n a valid traffic stop, an officer may request the driver to exit the vehicle and request a driver's license." *Swenson v. Culberson Cnty.*, 925 F. Supp. 478, 483 (W.D. Tex. 1996) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 108-11 (1977)); *Mimms*, 434 U.S. at 111 ("[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable seizures."). Kenyon's instruction to Mrs. Witt to get out of the car is no different. *Maryland v. Wilson*, 519 U.S. 408, 415 (1997) ("We therefore hold that an officer making a traffic stop may order passengers to get out of the car pending completion of the stop.").

Third, Kenyon's actions in opening the car doors, removing the Witts, and arresting them did not facially violate the Fourth Amendment. Although "[o]pening a vehicle's door . . . constitutes a search," *United States v. Meredith*, 480 F.3d 366, 369 (5th Cir. 2007), when an officer has "probable cause to arrest . . . for failure to comply, [the officer] c[an] lawfully open the car door to effect an arrest." *Garcia v. Bermea*, No. DR-21-cv-004-AM-CW, 2023 WL 7361372, at *16 n.22 (W.D. Tex. Aug. 18, 2023), *rec. accepted*, 2023 WL 6394398 (W.D. Tex. Oct. 2, 2023), *aff'd*, No. 23-50871, 2024 WL 3326088 (5th Cir. July 8, 2024).

Under Texas law, a person commits a misdemeanor offense when he "willfully fail[s] or refuse[s] to comply with a lawful order or direction of . . . a police officer." Tex. Transp. Code §§ 542.301, 542.501 (West 2026). Because Kenyon's traffic stop was lawful, his request for Mr. Witt to exit the vehicle was lawful. Mr. Witt's refusal to comply therefore provided Kenyon probable cause to arrest him, which permitted Kenyon to open the car door to effect that arrest. A warrantless arrest does not violate the Fourth Amendment when the officer has probable cause to

believe that the purported offender committed an offense in the officer's presence. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). That analysis holds true even when, as here, the offense in question is a misdemeanor. *Id.*

The law equally supports Kenyon's removal and arrest of Mrs. Witt. Under Texas law, a "person commits an offense if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with . . . a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law." Tex. Penal Code § 38.15(a) (West 2026). As previously noted, Kenyon initiated a lawful traffic stop which elicited probable cause to search the vehicle. Kenyon's command to Mrs. Witt to exit the vehicle was lawful. So, either by Mrs. Witt's refusal to obey a lawful order, her obstruction of a lawful search, or both, Kenyon plainly had probable cause to remove Mrs. Witt from the car and arrest her.

Next, the Witts challenge Horton's and Lowery's actions on June 18, 2025, when those officers entered the Witt home and arrested Mr. Witt, and when Lowery searched the Witts' daughter's bedroom. ECF No. 38 at 14. The Witts first assert that the Clay County officers "conducted a custodial arrest based on warrants that were later revealed to be improperly backdated and never presented at the time of arrest." *Id.* at 16. In support, they attach several documents to their Amended Complaint that they describe as "facially . . . irregular" and "lack[ing] clear judicial authorization." ECF No. 43 at 16. But these documents are facially ordinary writs of capias. *See* ECF No. 38 at 62-67. Texas law provides that a capias is a writ that is:

> (1) issued by a judge of the court having jurisdiction of a case after commitment or bail and before trial, or by a clerk at the direction of the judge; and (2) directed "To any peace officer of the State of Texas", commanding the officer to arrest a person accused of an offense and bring the arrested person before that court immediately or on a day or at a term stated in the writ.

Tex. Code Crim Pro. art. 23.01 (West 2026).

Here, the deputy clerk of the 97th Judicial District Court of Clay County signed the writs of capias that Horton executed on June 18, 2025. *See* ECF No. 38 at 62-67. The Witts' objection that a judge did not sign them is unavailing. Their further objection that the writs "b[ear] a false return of service" date is unclear and unconvincing. *Id.* at 61. The writs were issued on June 13, 2025, and Horton executed them on June 18, 2025. *See id.* at 62-67. That is the same date the Witts allege Clay County officers came to their home and arrested Mr. Witt. *Id.* at 14, 18. The Witts cite no authority that the officers had a legal obligation to present the writs to the Witts before executing them, and the Court is aware of none.

While the Witts summarily allege "systemic deficiencies in the issuance, documentation, and execution of arrest warrants," they point to no other facts to support this conclusion. ECF No. 43 at 16. Without additional facts, their allegation is not plausible based on an unsubstantiated hunch that the deputy clerk "backdated" them. ECF No. 38 at 16. Ultimately, the Witts do not allege a procedural deficiency in the writs.

The writs in this case are also facially valid.

> To be valid on its face, a capias must (1) run in the name of "The State of Texas"; (2) name the person whose arrest is ordered (or, if unknown, describe the person); (3) specify the offense of which the defendant is accused and state that he or she is accused of a penal offense; (4) name the court where the writ is returnable and the time at which it is returnable; and (5) be dated and officially attested to by the authority issuing it.

*Larrew v. Barnes*, No. 3:06-cv-547-R, 2006 WL 2993349, at *3 (N.D. Tex. Oct. 19, 2006) (citing Tex. Code Crim. Pro. art. 23.02).

The writs in this case meet each requirement. ECF No. 38 at 62-67. Therefore, because Horton and Lowery entered the Witt home to execute lawful writs of arrest, their entry and presence in the home did not violate the Fourth Amendment. "[A]n arrest warrant alone will suffice

to enter a suspect's own residence to effect his arrest." *Steagald v. United States*, 451 U.S. 204, 221 (1981) (citing *Payton v. New York*, 445 U.S. 573, 602-03 (1980)); *Velasco v. City of Brownsville*, No. 1:15-cv-143, 2017 WL 6443865, at *8 (S.D. Tex. Aug. 8, 2017) (citing *Sharp v. State*, 677 S.W.2d 513, 517 (Tex. Crim. App. 1984)) ("For purposes of constitutional scrutiny, there is no substantive difference between an arrest warrant and a writ of capias—either must be supported by probable cause.").

The Witts do not assert the absence of probable cause as to these writs, but even if they had or could, "arrests . . . made pursuant to the capias warrants . . . insulate[] [the officers] from liability . . . , even if the arrests were not actually supported by probable cause." *Damron v. Houston Cnty., Tex.*, No. SA-21-cv-665-XR (HJB), 2026 WL 1625161, at *8 (W.D. Tex. Apr. 27, 2026) (citing *Hughes v. Garcia*, 100 F.4th 611, 619 (5th Cir. 2024)); *Hughes*, 100 F.4th at 619 ("A warrant secured from a judicial officer typically insulates law enforcement personnel who rely on it from liability for unlawful arrest, even in the absence of probable cause." (cleaned up)). The Witts do not allege that either Horton or Lowery was involved in making false statements or otherwise compromising the provision of the writs of capias so as to abridge the "independent intermediary doctrine." *See Hughes*, 100 F.4th at 619 (discussing the exception under *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)). Accordingly, the Witts have not pleaded a constitutional violation in connection with the arrest of Mr. Witt on June 18, 2025.

As for Lowery's entrance into the Witt's daughter's bedroom, the Witts allege that he "opened the bedroom door of the Plaintiff[]s['] daughter and pointed a firearm at her, commanding her to sit down." ECF No. 38 at 14. But Mr. and Mrs. Witt do not state a Fourth Amendment claim from these actions. "[I]ncident to the arrest" of an individual in his home, law enforcement officers may, "as a precautionary matter and without probable cause or reasonable suspicion, look in

closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Maryland v. Buie*, 494 U.S. 325, 334 (1990). That is what happened here.

As pleaded, the Witts do not contend that Lowery entered their daughter's bedroom and rifled through her things, and there is no report that he did so or collected any kind of evidence. At most, he opened the door to her room to secure that space, as the law permitted him to do without violating the Fourth Amendment. To the extent the Witts challenge Lowery's alleged seizure of their daughter, they lack standing to pursue such a claim for the simple reason that Lowery did not allegedly seize them. "Fourth Amendment rights are personal rights . . . which may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978). The Witts cannot maintain a Fourth Amendment claim premised on events that happened to one of their family members, even if that member is their child. "Interpersonal relationships cannot make a 'victim' of one who is not otherwise 'one against whom the search or seizure is directed.'" *United States v. Hunt*, 505 F.2d 931, 939 (5th Cir. 1974).

Next, the Witts assert a Fourth Amendment claim concerning Mrs. Witt's custodial strip search at the Clay County Jail. ECF No. 38 at 32. Their chief argument is that the offense for which Kenyon arrested Mrs. Witt did "not justify a strip search under prevailing legal standards." *Id.* But the Witts do not cite those purported legal standards, and this is perhaps because the law squarely provides otherwise. "Correctional officers have a significant interest in conducting a thorough search as a standard part of the intake process" to examine new arrivals for contaminants, signs of infection, and contraband, among other concerns. *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 330-32 (2012). And there is no bright-line rule that the level of offense constitutionally proscribes a comprehensive visual search. *See id.* at 337-338; *id.* at 334 ("[T]he seriousness of an offense is a poor predictor of who has contraband.").

"[D]eference must be given to the officials in charge of the jail unless there is 'substantial evidence' demonstrating their response to the situation is exaggerated." *Id.* at 330. Here, the Witts contend that jail personnel subjected Mrs. Witt to a custodial strip search, but they do not allege any untoward behavior from Clay County officers or anything amounting to more than what is a standard intake procedure. While *Florence* distinguished certain circumstances where the justifications for a strip search may not be as significant (such as where a detainee is not introduced into the general prison population), and while that case did not consider the constitutional concerns posed by a tactile examination, *see Florence*, 566 U.S. at 338-339, the Witts do not plead facts that impinge on these considerations.

Further, the Witts do not plead, and no plausible construction suggests, that either Horton, Kenyon, or Lowery personally conducted the challenged strip search. *See, e.g.*, *id.* at 10 ("[Mrs. Witt] was transported to jail by a deputy other than the arresting officer [Kenyon]"). Resultantly, a claim against the individual defendants premised on this event must fail.

Finally, to the extent the Witts allege any Fourth Amendment violation from the alleged traffic stop of Mrs. Witt at the convenience store, *see* ECF No. 38 at 11-12, the facts the Witts plead are sparse. They reference this episode only once in the factual background section of their Second Amended Complaint, and they do not mention it again as one of the incidents in which they allegedly experienced a Fourth Amendment violation. *See id.* at 15-17. To the extent they intend this incident to underly a claim, they do not plead a basis to demonstrate that the officer lacked reasonable suspicion or probable cause. Further, because the alleged traffic stop only involved Mrs. Witt, Mr. Witt does not demonstrate that he has standing to pursue such a claim. Finally, none of the defendant officers in this case was involved. *See id.*

### 2. Excessive force

The Witts next allege that Kenyon, Horton, and Lowery employed "excessive and objectively unreasonable force" in violation of the Fourth and Fourteenth Amendments. ECF No. 38 at 17. "To establish a claim of excessive force under the Fourth Amendment, plaintiffs must demonstrate: (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009). "Claims of excessive force are fact-intensive; whether the force used was 'clearly excessive' and 'clearly unreasonable' depends on 'the facts and circumstances of each particular case,'" including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he was actively resisting arrest or attempting to evade arrest by flight. *Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

As for Horton and Lowery, it is not clear that the Witts even allege any force to begin with, let alone excessive force. There are two pertinent incidents featuring these officers: the November 2, 2024 car repossession when "multiple officers forcefully tackl[ed] and str[uck]," Mr. Witt, and the June 18, 2025 arrest when "officers violently seized" Mr. Witt and "threw [him] to the ground." ECF No. 38 at 13-14, 18-19. In either event, the Witts do not clearly contend that Horton or Lowery exerted any force against either of the Witts. During the repossession, the Witts allege "[a]n officer initiated physical contact by bumping into [Mr. Witt], which escalated the situation and resulted in multiple officers forcefully tackling and striking him on the ground." *Id.* at 13. But Horton's role during this incident was benign. He was merely "on the property." *Id.* Similarly,

during the June 2025 arrest, Horton played a nonphysical part. He "stood over [Mrs. Witt] while other officers forcibly threw [Mr. Witt] to the floor." *Id.* at 14. And to the extent the Witts allege that further incidents (the April and July 2024 "militarized standoff[s]," at which Horton was a participant), constituted excessive force, the Witts do not allege an injury resulting from those events. *See id.* at 11-13, 18-19. They complain, for example, that Clay County officers "surrounded the [Witts'] home with assault rifles drawn while minor children . . . were visibly present in the area." *Id.* at 18. But despite characterizing the events as "overwhelming display[s] of force," no excessive force claim is possible without an injury, which the Witts do not assert. *Id.*

Likewise, the Witts do not tie Lowery to any alleged excessive force. They do not name him as one of the parties present at the repossession or standoffs, *see id.* at 11-13, 18, and they specifically note that while some unnamed officers "forcibly threw [Mr. Witt] to the ground," during the June 2025 arrest, Lowery was "open[ing] the bedroom door of [the Witts'] 12 year old daughter." *See id.* at 14. If they mean to imply that Lowery was one of the officers who allegedly forced Mr. Witt to the floor, and only later opened the bedroom door, the Witts do not say as much.

That leaves the Witts' allegation against Kenyon. They plead that Kenyon "forcibly removed both Plaintiffs from the vehicle," "physically assaulted" Mr. Witt, and "forced" Mrs. Witt "to stand on an incline in handcuffs despite [her] repeatedly stating she could not maintain balance due to her prosthetic leg." ECF No. 38 at 7, 9, 18. "Generally, to maintain a claim for excessive force, a plaintiff need not demonstrate a significant injury, but the injury must be more than *de minimis*." *Solis v. Serrett*, 31 F.4th 975, 981 (5th Cir. 2022) (emphasis in original). Here, to the extent Mr. Witt was injured by "physical assault," he does not describe any injuries. The same is true of Mrs. Witt's claims. The Witts do not plead facts to support that they suffered an injury, nor any other facts by which the Court can measure the *Graham* reasonableness factors. And to the

extent that Kenyon exercised excessive force against them during the "militarized standoff" on April 12, 2024, the "use of aggressive, militarized tactics", without an injury, does not amount to excessive force. ECF No. 38 at 11. Accordingly, the Witts do not state a claim for excessive force.

**3. Malicious prosecution**

The Witts next assert malicious prosecution against Horton, Kenyon, and Lowery. ECF No. 38 at 19. Specifically, they allege that the officers pursued criminal charges against Mr. Witt in retaliation for various actions, including in pertinent part, the filing of this lawsuit. *See id.* at 19-21. To state a claim for malicious prosecution, a plaintiff:

> must prove an unlawful Fourth Amendment seizure and substantiate the following six elements: (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages.

*Santander v. Salazar*, 133 F.4th 471, 482 (5th Cir. 2025) (cleaned up) (quoting *Armstrong v. Ashley*, 60 F.4th 262 (5th Cir. 2023)).

The Witts' malicious prosecution claim fail as a matter of law. First, to the extent Mrs. Witt brings this claim, she does not allege any prosecution of her, and certainly not a malicious one. *See* ECF No. 46 at 3 ("Plaintiffs are unaware of any criminal case number, prosecution, or conviction arising from [Mrs. Witt's] arrest, and no criminal proceedings against Mrs. Witt appear to have continued following her arrest."). Second, Mr. Witt's claim is equally unavailing because the criminal proceedings that underly it did not terminate in his favor. When the Witts filed their Amended Complaint on November 22, 2025, they pleaded that "[t]he felony charges currently holding [Mr.] Witt in jail . . . were instead delayed and filed in coordination with retaliatory motives." ECF No. 38 at 20. (emphasis added). Because ongoing criminal proceedings cannot

form the basis of a malicious prosecution claim, the Witts' claim would fail on this basis alone. *See Santander*, 133 F.4th at 482. As explained previously, however, all of Mr. Witt's felony charges in the 97th Judicial District Court of Clay County have ended in a conviction. Because a malicious prosecution claim requires the underlying criminal proceedings to be terminated in a plaintiff's favor, and Mr. Witt's did not, his malicious prosecution claim fails.

**4. Retaliation and right to petition**

The Witts next allege that Horton and Kenyon retaliated against them after Mrs. Witt "exercise[ed] her right to open records requests" and "verbally express[ed] objections" to law enforcement conduct. ECF No. 38 at 25-27. They also claim that Horton and Kenyon violated their First Amendment rights to petition the government for redress of grievances. *See, e.g.*, *id.*, *id.* at 35-36. Specifically, the Witts allege that Mrs. Witt's inquiring into law enforcement records, filing public records requests, and informing Horton "face-to-face[] that his department was acting . . . without legal bonding," led Clay County officers to surround the Witt home on separate occasions in "militarized standoff[s]." *See id.* at 11-15, 26-27. The Witts further allege that the last of these "standoff[s]" was also in retaliation for this lawsuit, which they filed on June 17, 2025. *Id.* at 15.

To establish a First Amendment retaliation claim, the plaintiff must show (1) he or she was engaged in a constitutionally protected activity, (2) the government's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing that activity, and (3) the government's adverse actions were substantially motivated against the plaintiff's exercise of the constitutionally protected conduct. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).

Defendants argue that "Plaintiffs have yet to plead any facts which show that [Plaintiff] engaged in protected speech or other protected conduct." ECF No. 44 at 6. First, as to Mrs. Witt's "question[ing] [of] the deputies' lawful authority to act," which Mrs. Witt posed directly to Horton,

*see* ECF No. 38 at 13, 21, it is plausible that at least this activity was protected. *See City of Hous. v. Hill*, 482 U.S. 451, 461 (1987) ("[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."). But even if it were, the Witts do not assert facts showing that Mrs. Witt's conversation with the sheriff substantially motivated Horton's and Kenyon's activities following her "face-to-face" encounter with Horton. Nor is there any temporal proximity between the two. The encounter with Horton occurred on November 2, 2024, and the singular incident of alleged retaliation following that date was the "standoff" on June 18, 2025. *See id.* at 9-15.

The third element of a First Amendment retaliation claim requires the Witts to show a "but-for" causal connection between the government's retaliatory animus and the plaintiffs' subsequent injuries—in other words that Mr. Witt's arrest in June 2025 "would not have occurred absent [Horton's and Kenyon's] retaliatory motive[s]." *See Nieves v. Bartlett*, 587 U.S. 391, 398-99 (2019). The Witts cannot demonstrate this for at least two reasons. First, Kenyon was not at the June 2025 arrest, and the Witts do not allege that he had any role in planning or executing the arrest or even that he would have been motivated to arrest Mr. Witt in retaliation for chance remarks Mrs. Witt made to Horton the previous November. *See* ECF No. 38 at 14-15.

Second, Clay County officers surrounded the home to effect Mr. Witt's arrest in accordance with a warrant to do so. Although the Witts argue that that warrant bore certain invalidating procedural defects, the Witts do not seriously posit that it lacked probable cause. *See* Section III.B.1, *supra*; ECF No. 38 at 15-16. At most, they contend that the "charges" later brought against Mr. Witt were "without probable cause." *See* ECF No. 38 at 20. But if by this allegation they mean that any arrest warrant lacked probable cause, the Witts do not make this clear. In any event, they do not explain or demonstrate the absence of probable cause. This is dispositive. When a police

officer has probable cause to arrest a person, a claim that that arrest was retaliatory generally fails as a matter of law. *Cruz v. Delgado*, No. H-16-3568, 2017 WL 11503868, at *5 (S.D. Tex. Dec. 7, 2017); *Degenhardt v. Bintliff*, 117 F.4th 747, 758 (5th Cir. 2024); *see also Reichle v. Howards*, 566 U.S. 658, 665 (2012) ("Here, the right in question is . . . the more specific right to be free from a retaliatory arrest that is otherwise supported by probable cause. This Court has never held that there is such a right.").

Beyond the June 18, 2025 arrest itself, the Witts also contend that the manner of that arrest was retaliatory. *See, e.g.*, ECF No. 38 at 27 (alleging that "deputies used unnecessary force, threatened minor children, and unlawfully entered Plaintiffs' home"). First, any claim born from Mrs. Witt's vocal opinion about Clay County law enforcement fails against Kenyon because he was not at the June 2025 "standoff." Such a claim also fails against Horton. Essential to the Witts' claim is that whatever injuries they experienced during the standoff would not have occurred absent a retaliatory animus from Horton. The Witts do not allege facts that even hint at this.

Next, the Witts also contend that Kenyon and Horton retaliated against them for Mrs. Witt's public information inquiries and the present lawsuit. But this contention does not state a claim. First, a claim premised on the Witts' filing of this lawsuit fails for the same reasons their claim premised on Mrs. Witt's comments to Horton does. The June 18, 2025 standoff is the only alleged instance of retaliation to temporally follow the filing of this lawsuit on June 17, 2025, *see* ECF No. 38 at 9-15, and that incident is insufficient to state a claim. The standoff concerned a lawful arrest, and the Witts have offered no facts to show that Horton wished to enter their home for any reason other than to arrest Mr. Witt under the warrant in his possession. Additionally, the inapplicability of this claim to Kenyon is once again self-evident since he was not present for the alleged retaliatory conduct or related to it in any discernible way.

Second, as to the public information inquiries, Mrs. Witt's pertinent activity consisted of (1) submitting a "formal public records request under the Texas Public Information Act seeking a complete set of records related to her arrest and detention," (2) submitting a FOIA request "seeking documentation related to the strip search conducted on April 3, 2024," (3) sending a "public records request email" to Horton and Kenyon "formally seeking Kenyon's oath of office and surety bond information pursuant to the Texas Open Records Act," and (4) submitting a "written request" asking "for the oaths of office and surety bond information for Deputies Nicholas Hamilton and Billy Kenyon." *Id.* at 9-15.

But a First Amendment retaliation claim requires protected activity, and the Witts offer no authority for their proposition that Mrs. Witt's activity fits that description. Although they invoke the "First Amendment right to petition the government by submitting lawful public records requests," ECF No. 38 at 35, they do not provide authority for the specific proposition that a public records request falls within the ambit of protected petitioning. To be sure, the case they cite in response to Defendants' Motion to Dismiss, *Borough of Duryea v. Guarnieri*, 564 U.S. 379 (2011), explains the history and dimensions of constitutionally protected petitions at some length. But it does not address the Witts' narrower contention that submitting a public information request in itself is a constitutionally protected activity.

Indeed, to the contrary, "both the Supreme Court and the Fifth Circuit have stated, in no uncertain terms, that the First Amendment does not mandate a right of access to government information." *Zorn v. U.S. Dep't of Just.*, No. H-22-2396, 2024 WL 2989733, at *9 (S.D. Tex. May 21, 2024) (first citing *United States v. Brown*, 250 F.3d 907, 915 (5th Cir. 2001), and then quoting *Houchins v. KQED, Inc.*, 438 U.S. 1, 15 (1978)), *rec. accepted*, 2024 WL 3855682 (S.D. Tex. Aug. 16, 2024). Consequently, access to public records outside of the criminal proceeding

context, even if guaranteed by other law, is not a right that the Constitution guarantees. *See Norwood v. City of Hammond*, No. CIV.A.02-0200, 2003 WL 1090253, at *2 (E.D. La. Mar. 11, 2003); *Plustache v. City of New Orleans*, No. 18-4844, 2021 WL 4948182, at *4 (E.D. La. Oct. 25, 2021) ("[A] failure to honor a public records request . . . does not implicate any federal constitutional . . . rights."), *aff'd sub nom. Plustache v. Harrison*, No. 22-30110, 2023 WL 3197043 (5th Cir. May 2, 2023); *Kelley v. Cochran*, No. 1:25-CV-00191-MJT-ZJH, 2025 WL 2787416, at *6 (E.D. Tex. Sept. 16, 2025) ("The Eastern District of Texas has rejected the idea that [Texas Public Information Act] requests are constitutionally protected speech."), *rec. accepted*, 2025 WL 2785036 (E.D. Tex. Sept. 30, 2025).

Outside of their invocation of the Petition Clause of the First Amendment, the Witts provide no other authority or argument that Mrs. Witt's public records requests were protected activity. But even if they were, the Witts' pleadings lack any plausible causal connection between Mrs. Witt's requests and any later conduct of Clay County officers. The June 2025 standoff does not suffice as retaliatory for reasons already explained at length. But the other incident the Witts specifically contend was in retaliation for Mrs. Witt's activity (the July 2024 standoff, *see* ECF No. 38 at 27), ostensibly concerned a vehicle repossession on the Witt property. And the Witts provide no facts to show that the repossession resulted from retaliation. Moreover, a state court magistrate determined that probable cause supported the eventual arrest of Mr. Witt for his conduct during that standoff. *See* ECF No. 38 at 73.

Further, the Witts' claim concerning an alleged violation of their right to petition is legally insufficient. "The Petition Clause does not impose an affirmative obligation on government officials to respond to such petitions," and a claim asserting a First Amendment violation for a failure to do so cannot lie. *Kelley v. Cochran*, No. 1:25-CV-00191-MJT-ZJH, 2025 WL 2787416,

at *6 (E.D. Tex. Sept. 16, 2025) (citing *Smith v. Ark. State Highway Emps., Loc. 1315*, 441 U.S. 463, 465 (1979)), *rec. accepted*, 2025 WL 2785036 (E.D. Tex. Sept. 30, 2025).

5. **ADA failure to accommodate**

Mrs. Witt next brings a claim, ostensibly under 42 U.S.C. § 1983 and the Americans with Disabilities Act, alleging that she "was subjected to physical mistreatment and humiliation during her arrest and detention." ECF No. 38 at 33-34; *see also* ECF No. 46 at 5 (confirming that Mr. Witt does not allege such injuries). Specifically, Mrs. Witt contends that Kenyon ordered her to stand on an incline, and that during her strip search, unnamed Clay County Jail personnel "failed to provide [Mrs. Witt] a chair or any other accommodation while requiring her to remove her prosthetic leg and clothing," which caused her "physical pain and distress." ECF No. 38 at 33-34.

First, as to the alleged due process violation, Mrs. Witt cites no authority and makes no argument to suggest that any individual violated her due process rights from these events, other than a summary conclusion that she suffered a "clear violation of her rights as a disabled individual." *See* ECF No. 38 at 33-34. This is plainly insufficient.

Second, as to the ADA claim, to establish a *prima facie* case under the ADA, a plaintiff must show "(1) that [s]he is a qualified individual within the meaning of the ADA; (2) that [s]he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of h[er] disability." *Reed v. Nacogdoches Cnty.*, No. 9:19-cv-00086-ZJH, 2022 WL 705918, at *18 (E.D. Tex. Feb. 3, 2022) (citing *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020)), *aff'd*, No. 22-40126, 2023 WL 3563017 (5th Cir. May 19, 2023). A plaintiff may satisfy her pleading burden as to the third element by invoking a failure to accommodate theory. *Royal v. Scurry Cnty.*,

No. 5:23-cv-214-H-BV, 2025 WL 714721, at *11 (N.D. Tex. Jan. 7, 2025), *rec. accepted*, 2025 WL 714170 (N.D. Tex. Mar. 5, 2025).

Mrs. Witt attempts to assert a claim under this theory. To successfully plead a failure to accommodate, she must demonstrate "(1) [s]he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." *Sligh v. City of Conroe*, 87 F.4th 290, 304 (5th Cir. 2023) (per curiam).

Ultimately, Mrs. Witt's claim fails because she pleads no facts to demonstrate that she is a qualified individual with a disability. The ADA "confers a special meaning to the term 'disability.'" *Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1024 (5th Cir. 1999). "'[D]isability' means, with respect to an individual (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). "Whether [that] impairment is substantially limiting is determined in light of (1) the nature and severity of the impairment, (2) its duration or expected duration, and (3) its permanent or expected permanent or long-term impact." *Talk*, 165 F.3d at 1024. Meanwhile, "[m]ajor life activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id.* at 1024-25.

The Court has scarce factual details to conduct this analysis. Here, Mrs. Witt pleads that she is an amputee who uses a prosthetic leg. ECF No. 38 at 9, 33-34. Although she complains that she could not "safely maintain balance" on a highway incline, ECF No. 38 at 9, she otherwise only summarily contends that she has unspecified "physical limitations." *Id.* at 34. And she does not explain that she has any such difficulty with major life tasks. Even if a prosthesis may somewhat

complicate movement, "[i]t is clear . . . that moderate difficulty experienced while walking does not rise to the level of a disability [as envisioned by the ADA]." *Talk*, 165 F.3d at 1025. Mrs. Witt's failure to plead facts to demonstrate that she qualifies under the ADA is dispositive here, and her claim should be dismissed. *See Mink v. Wal-Mart Stores, Inc.*, 185 F. Supp. 2d 659, 664 (N.D. Miss. 2002).

**6. Unlawful denial of access to public records**

Mrs. Witt next claims that Defendants violated her rights under the First and Fourteenth Amendments, "as well as the Texas Public Information Act," by "repeatedly ignoring or denying lawful requests for public records." ECF No. 38 at 24; *see also* ECF No. 46 at 5 (confirming that Mr. Witt does not allege such injuries). But there is no federal right to seek public records of a local government. *See Kelley*, 2025 WL 2787416, at *5.

Further, the Witts must assert an alleged violation of the Texas Public Information Act ("TPIA"), in state court. Section 552.321 of the Texas Government Code provides that a "suit filed by a requestor [of information] under this section must be filed in a district court for the county in which the main offices of the government body are located." Tex. Gov't Code § 552.321(b). "The majority of federal district courts in Texas have interpreted § 552.321(b) to require plaintiffs to file their claims in state court originally." *Post Hole Ventures, LLC v. City of Kerrville*, No. SA-21-CV-00980-XR, 2022 WL 11455956, at *7 (W.D. Tex. Oct. 19, 2022) (collecting cases); *see also Jackson v. Tex. S. Univ.*, No. CIV.A. H-11-4092, 2013 WL 593412, at *7 (S.D. Tex. Feb. 14, 2013) ("[F]ederal district courts are courts of limited statutory jurisdiction . . . [and lack] jurisdiction to issue a mandamus against Texas state officials to order them to provide Plaintiff with her requested information."). Because the Witts' claim under the TPIA belongs in the 97th Judicial District Court of Clay County, and not this Court, it should be dismissed.

**7. Other unspecified due process claims**

The Witts also summarily allege that Kenyon, Horton, and Lowery "deprived Plaintiffs of their liberty and property without due process of law." ECF No. 38 at 21. To this end, they cite to a medley of occasions that they raise in separate claims, which the Court already has discussed at length. *See id.* at 22-23. To the extent the Witts repeat their other claims, those claims are unavailing for the reasons already established. To the extent the Witts raise new due process claims, they do not specify the basis for them or identify the facts that support such claims. These claims are unavailing.

**8. Failure to intervene and supervisory liability**

At various times in their Complaint, the Witts allege that Horton is liable under failure to intervene and supervisory liability theories for the conduct of Clay County officers. *E.g.*, ECF No. 38 at 28-29, 32-34, 36-38. As to the second theory of liability, "Section 1983 does not create supervisory or *respondeat superior* liability." *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). "Rather, a plaintiff must show either [that] the supervisor personally was involved in the constitutional violation or that there is a 'sufficient causal connection' between the supervisor's conduct and the constitutional violation." *Brown v. Taylor*, 911 F.3d 235, 245 (5th Cir. 2018). For the reasons explained at length, the Witts have not pleaded a constitutional violation and have not stated facts to suggest that Horton was intimately involved in one. And as to the first theory of liability, the absence of a constitutional violation forecloses a failure to intervene theory as well. *See Buehler v. Dear*, 27 F.4th 969, 989 (5th Cir. 2022).

For all the reasons discussed, Kenyon, Horton, and Lowery are entitled to qualified immunity and dismissal on that basis.

**B. Claims against Clay County**

The Witts also assert claims against Horton and Lowery in their official capacities. *See* ECF No. 38 at 1, 6-7. As such, these claims are necessarily against Clay County. "A suit against a government officer in his official capacity is the same as a suit against the entity of which the officer is an agent." *Baker v. Llano Cnty.*, 746 F. Supp. 3d 429, 439 (W.D. Tex. 2024). To bring a § 1983 claim against a municipal entity like Clay County requires three elements: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't. of Social Services*, 436 U.S. 658, 694 (1978)).

"Official policy can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but also may arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting *Piotrowski*, 237 F.3d at 579). Here, the Witts contend that Clay County exhibited a "failure to train and supervise officers on the limits of lawful searches, arrests, and use[s] of force," "[t]olerat[ed] or ratif[ied] misconduct by deputies," "[r]efus[ed] to implement safeguards against abuse of authority," "[d]en[ied] access to public records and fail[ed] to properly document and disclose transportation and booking procedures," and "[p]roduc[ed] false or misleading internal records to justify unconstitutional acts." ECF No. 38 at 30-31. But despite these allegations, the Witts do not provide even "minimal factual allegations" that the alleged constitutional violations they suffered were anything more than a series of isolated incidents. And even more dispositive than this, the Witts do not plead a constitutional violation.

**C. Claims against Clay County Sheriff's Department**

All of the Witts' claims against CCSD likewise fail as a matter of law. This is because the law does not permit a civil action against any county agency or department unless that agency or department "enjoys a separate and distinct legal existence" from the county. *Gonzales v. Hunt Cnty. Sheriff's Dep't*, No. 3:20-cv-3279-K, 2021 WL 2337143, at *4 (N.D. Tex. June 8, 2021) (citing *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991)); *see also Darby*, 939 F.2d at 313-14 ("[U]nless the true political entity [the county] has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government itself.").

Here, the Witts do not demonstrate that Clay County ever endowed its sheriff's department with jural authority, and numerous cases from federal district courts across Texas confirm that county sheriff's departments are incapable of being sued absent such a show of jural authority. *See, e.g., Est. of Schroeder v. Gillespie Cnty.*, 23 F. Supp. 3d 775, 781 (W.D. Tex. 2014); *Brownlee v. Johnson Cnty. Sheriff's Dep't*, No. 3:25-cv-2321-N-BN, 2025 WL 3700160, at *2 (N.D. Tex. Dec. 3, 2025), *rec. accepted*, 2025 WL 3697415 (N.D. Tex. Dec. 19, 2025); *Sullivan v. Garza Cnty. Sheriff's Off.*, No. 5:23-cv-049-H-BQ, 2023 WL 9219176, at *4 (N.D. Tex. Nov. 3, 2023), *rec. accepted*, 2024 WL 130758 (N.D. Tex. Jan. 11, 2024); *Villarreal v. Willacy Cnty. Sheriff's Dep't*, No. 1:24-cv-57, at *3 (S.D. Tex. July 19, 2024), *rec. accepted*, 2024 WL 3871759 (S.D. Tex. Aug. 19, 2024); *Lind v. Lamar Cnty. Sheriff's Off.*, No. 4:22cv490, 2023 WL 8172415, at *2-3 (E.D. Tex. Aug. 3, 2023), *rec. accepted*, 2024 WL 420114 (E.D. Tex. Feb. 3, 2024).

The Court must dismiss the Witts' claims against CCSD because it is a nonjural entity. But the Witts argue that even so, the Court should permit them to amend their complaint at this late stage to assert claims against Clay County. ECF No. 43 at 14. The Court should decline to grant them leave to do so because any such amendment would be futile. The Federal Rules of Civil

Procedure task the Court to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). There are five considerations the Court examines when determining whether to grant a party leave to amend: 1) undue delay, 2) bad faith or dilatory motive, 3) repeated failure to cure deficiencies by previous amendments, 4) undue prejudice to the opposing party, and 5) futility of the amendment. *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004). For the reasons outlined at length in this findings, conclusions, and recommendation, such amendment would not provide a pathway to relief for the Witts. The Witts already sue Clay County directly by suing Horton and Lowery in their official capacities, and their claims against the County are unavailing.

**D. Injunctive relief**

Finally, the Witts seek injunctive relief "enjoining Defendants and their agents from further violating Plaintiffs' constitutional rights and requiring appropriate training, policy revisions, or oversight of jail conditions, recordkeeping, and use-of-force policies in Clay County." ECF No. 38 at 40. But "[a]bsent a sufficient likelihood that [they] will [allegedly] again be wronged in a similar way, [the Witts are] no more entitled to an injunction than any other citizen" of Clay County. *See City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983). "[A] federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional." *Id.* Here, the Witts do not provide any facts to plausibly suggest that any actionable behavior of Clay County officers is likely to befall them, and as consequently the Witts lack standing to pursue the injunctive relief they request. *See id.* at 105-110.

**E. Dismissal without leave to amend**

It is a "well-established policy that the plaintiff be given every opportunity to state a claim." *Ramming*, 281 F.3d at 161. Nonetheless, courts may appropriately dismiss an action with prejudice

if the court finds that the plaintiff has alleged his best case. *Jones*, 188 F.3d at 327. Here, where the Witts' claims are actionable, their factual allegations are insufficient to survive dismissal.

The Witts have amended their complaint twice, but at either opportunity, they did not move beyond conclusory allegations or otherwise factually fortify their pleadings. The undersigned concludes that the Witts have pleaded their best, though legally insufficient, case, and further amendment would be futile for each claim. Accordingly, the Court should dismiss the Witts' Second Amended Complaint without leave to amend. As to the Witts' claim for injunctive relief, the Court should dismiss that claim without prejudice for lack of standing. *See Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 468 (5th Cir. 2020).

## IV. CONCLUSION

For these reasons, the undersigned **RECOMMENDS** that Chief Judge O'Connor **GRANT** Defendants' Motion and **DISMISS** the Witts' Second Amended Complaint except for their claim for injunctive relief, which he should **DISMISS without prejudice**.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except

upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

**SIGNED** on July 13, 2026.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE